UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LAMAR GOULD,

        Plaintiff,                CIVIL ACTION NO. 13-cv-11624

        v.                           DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Andrew Lamar Gould seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (Docket no. 10) and Defendant's Motion for Summary Judgment (Docket no. 13). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (Docket no. 10) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 13) be GRANTED.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income with a protective filing date of November 17, 2009, alleging

disability beginning April 30, 2008, due to an affective disorder and substance abuse. (*See* TR 11, 14.) The Social Security Administration denied Plaintiff's claims on March 19, 2010, and Plaintiff requested a *de novo* hearing which was held on June 7, 2011, before Administrative Law Judge (ALJ) Theodore W. Grippo, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 11, 22.) The Appeals Council declined to review the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment which are currently before the Court.

### III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND THE VOCATIONAL EXPERT'S TESTIMONY

####    A.    Plaintiff's Testimony

Plaintiff was 44 years old at the time of the administrative hearing and 41 years old at the time of alleged onset. At the time of the hearing, Plaintiff rented a house along with two roommates and had been sober for approximately seven years. (TR 33, 34.) Plaintiff testified that since April 30, 2008, he had worked part-time as an office manager, but he was fired because he went to a psychiatric institution and his boss felt that he was unable to perform the job. (TR 31-32.) He added that he had also worked in sales at a cellular phone provider, as a freelance production assistant, and as a caregiver. (TR 32.) Plaintiff stated that, at the time of the hearing, he was unable to work full-time because he couldn't seem to get out of bed. (TR 32.) He elaborated that he generally slept 14 hours per day and that when he would lay in bed and think about work, he would get overwhelmed and give up. (TR 32-33.) Plaintiff testified that on an average day, he would go to bed around 2:00 or 3:00 a.m. and sleep until that same time in the afternoon or later; he would also nap for an hour or two every other day. (TR 39.) Plaintiff further stated that another reason why he could not work

2

full-time was because he heard voices daily, often when faced with stressful situations. (TR 33.)

Plaintiff testified that he generally left the house every day to go to Alcoholics Anonymous meetings, the grocery store, or the gas station. (TR 35.) Plaintiff said that he did do some housework but that he usually tried to avoid it and instead put the responsibility on his roommates. (TR. 33.) He also said that he liked to play disc golf and throw a boomerang around one to two times per summer. (TR. 33.) Plaintiff stated that he did not have any problems with his appetite, but that he did have high cholesterol and weighed about ten pounds more than he did a couple of years ago due to the medications he was taking. (TR. 34.) He added that his energy level was low and that he felt sluggish and tired, even after consuming energy drinks. (TR 34-35.) Plaintiff also admitted to having a fear of confrontation regarding issues such as his lack of participation in household chores. (TR. 35.) He further stated that he had trouble focusing on things and could only stay attentive for ten minutes to a half hour. (TR 36.)

Plaintiff testified that he had suicidal thoughts from time to time, mostly when stressed. (TR 36.) He said that when he thought about committing suicide, he would call a friend to talk about it and work it out. (TR 36.) Plaintiff also admitted to having hallucinations and racing thoughts. (TR 36-37.) He stated that the racing thoughts usually only happened at work when his boss was looking at him or trying to get him to do something; he would then have thoughts about inadequacy. (TR 37.) Plaintiff added that he lost a job once due to having a crying spell and that he still has crying spells when he thinks of his father. (TR 37-38.) Plaintiff further testified that he met with a psychiatrist every two months and a counselor every three weeks and that he took the medications that they prescribed. (TR 38.) With these medications, Plaintiff stated that he experienced side effects such as drowsiness, ringing in the ear, and weight gain. (TR 39.)

Plaintiff testified that his living expenses were about $1,000.00 per month. (TR 40.) He told

the ALJ that he didn't earn that money, that he instead received food stamps and asked his mother for money to pay his rent and car insurance. (TR 40.) He added that he had to mow the lawn and do other chores for his mother in exchange for the money. (TR 40.) When the ALJ asked Plaintiff whether he could translate the work he did for his mom into the necessary skills for a full-time job, Plaintiff responded that he wasn't sure about working full-time because it scared him. (TR 41). Plaintiff stated that he handled his own money and was learning to do so responsibly. (TR 41.) He admitted to past problems with paying rent and car insurance on time, but stated that he hasn't had many problems since 2007. (TR 42-43.)

### B.     Medical Evidence

Defendant asserts that "[t]he ALJ's recitation of the relevant medical evidence . . . [is] sufficiently detailed and need not be presented here." (Docket no. 13 at 8.) Plaintiff's account of his medical history is largely consistent with, yet less detailed than, the ALJ's discussion of Plaintiff's medical record. (*Compare* docket no. 10 at 5-9, *with* TR 17-21.) Thus, the undersigned, having conducted an independent review of Plaintiff's medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion (TR 17-21) and as set forth in Plaintiff's Motion (Docket no. 10 at 5-9). The undersigned will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### C.     Vocational Expert's Testimony

The ALJ asked the Vocational Expert (VE) whether a hypothetical person of the same age, education, and work experience as Plaintiff, who was limited to performing simple and unskilled tasks, could perform any of Plaintiff's past relevant work. (TR 46.) The VE testified that such an individual could not perform any of Plaintiff's past relevant work but could perform work, for example, as a packager, cleaner, or simple machine operator. (TR 47.) The VE added that these

three positions were at the medium range of work and existed in significant numbers in the regional and national economy. (TR 47.)

The ALJ then asked the VE to consider whether a second hypothetical person of Plaintiff's age, education, and work experience could perform any of Plaintiff's past relevant work experience where that person was seriously limited, but not precluded, from "remembering work-like procedures; maintaining attention for two-hour segments; maintaining regular attendance and punctuality; sustain[ing] an ordinary routine without special supervision; work[ing] in coordination with others without being unduly distracted; making simple, work-related decisions; performing at a consistent pace; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; and dealing with normal stress." (TR 48.) The ALJ further asked the VE to assume that this hypothetical person "would be unable to complete a normal workday and work week without interruptions from psychologically-based symptoms. (TR 48.) The VE testified that such an individual would not be able to perform any of Plaintiff's past relevant work or any other work that exists in significant numbers in the regional or national economy. (TR 48.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2011; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 30, 2008; and that Plaintiff suffered from affective disorder, a severe impairment. (TR 13-14.) The ALJ also found, however, that Plaintiff's history of alcohol and polysubstance abuse was remote and nonsevere and that his impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Subpart 404, Subpart P, Appendix 1. (TR 14.) The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform a full

range of simple, unskilled work at all exertional levels. (TR 15.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 22.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 30, 2008, through the date of the ALJ's decision. (TR 22.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed and remanded under sentence four because (1) the ALJ "failed to properly apply the 'treating physician' rule relative to the opinions of [P]laintiff's treating psychiatrist, Dr. Mathew;" (2) "the ALJ's discounting of Dr. Mathew's opinions is . . . unsupported by substantial evidence, particularly given his failure to properly weigh the opinions of other sources in the record;" and (3) "the ALJ's RFC assessment and hypothetical question fail to effectuate his own findings regarding [P]laintiff's limitations as to social functioning and concentration, persistence, or pace." (Docket no. 10 at 12-20.)

### 1. The ALJ's Assessment of Dr. Mathew's Medical Opinion

The ALJ afforded little weight to the medical opinion of Plaintiff's treating psychiatrist, Dr. Sajida Mathew, M.D., for three particular reasons. (TR 20.) First, the ALJ found that Dr. Mathew's opinion was contradicted by her own written notes and evaluations which consistently indicated that Plaintiff's mental condition was improving and stabilizing. (TR 20.) Secondly, the ALJ found that

8

Dr. Mathew's employer, Training and Treatment Innovations (TTI), conditioned Plaintiff's treatment upon applying for Social Security. (TR 20.) Lastly, the ALJ based his assessment on the fact that a portion of Dr. Mathew's March 21, 2011 medical source statement was written in another hand and not properly endorsed by Dr. Mathew. (TR 20.) The ALJ also noted that other than two annual psychiatric evaluations, Dr. Mathew's treatment of Plaintiff consisted of little more than short medication review appointments, averaging only 15 to 20 minutes each.. (TR 19.) Plaintiff argues that these are not "good reasons" to discount Dr. Mathew's medical opinion under 20 C.F.R. § 404.1527(c). (Docket no. 10 at 12-13.) Defendant counters that the ALJ reasonably allocated little weight to Dr. Mathew's medical opinion. (Docket no. 13 at 10.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §

404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3)

10

"where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson*, 378 F.3d at 547).

The first reason that the ALJ gave little weight to Dr. Mathew's medical opinion is because he found it to be inconsistent with her treatment notes and evaluations. (TR 20.) Specifically, the ALJ determined that Dr. Mathew's treatment notes signified that Plaintiff had fewer limitations and was doing much better than Dr. Mathew indicated in a March 2011 medical source statement. (TR 20.) In the March 2011 medical source statement, Dr. Mathew opined that, with regard to Plaintiff's mental ability and aptitude needed to perform unskilled work, Plaintiff was seriously limited, but not precluded from tasks such as remembering work procedures, maintaining focus for two-hour periods, maintaining an ordinary routine without special supervision, working in coordination with or in proximity to others without distraction, performing at a consistent pace, accepting instructions and responding to criticism from supervisors, and dealing with normal work stress. (TR 487.) Dr. Mathew also found that Plaintiff would be unable to complete a normal work day or work week without interruptions from psychologically-based symptoms. (TR 487.) Dr. Mathew's treatment notes and evaluations nevertheless demonstrate a continuous pattern of improvement in Plaintiff's mental health and stability when compliant with his medications starting from Dr. Mathew's initial psychiatric evaluation of Plaintiff in December of 2008 through Dr. Mathew's March 2011 medication review. (*See* TR 252-263, 306-339, 414-457.) According to Dr. Mathew's March 2011 medication review note, Plaintiff was "feeling great" and had been compliant with most of his medications. He had also been working part time and was motivated to go to work. (TR 423.) After a careful review of the record, the undersigned finds that the ALJ's conclusion that Dr. Mathew's medical opinion was inconsistent with her treatment notes and evaluations is supported

11

by substantial evidence.

The ALJ also afforded little weight to Dr. Mathew's medical opinion because he deduced that Dr. Mathew's employer, TTI, made applying for Social Security disability a condition and goal of Plaintiff's treatment, despite Plaintiff's expressed desire to work. (TR 20.) To support his conclusion, the ALJ cites an Interpretive Summary of Plaintiff dated October 13, 2008, that was written by two TTI employees. (TR 20, 264-65.) In a section of the Summary titled "General discussion, recommendations, and rationale for recommendations," under the subsection titled "Recommended Goal Areas," the last sentence states, "It is further recommended that [Plaintiff] apply for social security benefits as well as medical coverage through DHS." (TR 265.) There are other similar references to Social Security in Plaintiff's medical records from TTI. For example, according to Plaintiff's treatment plan effective as of October 30, 2008, in order to achieve Plaintiff's desired outcome of financial independence, Plaintiff is charged with the responsibility of "apply[ing] for social security within three months" and "follow[ing] through with all paperwork, appointments, and requirements regarding his social security application over the next year." (TR 291.) TTI committed to "assist[ing] [Plaintiff] as needed with applying for social security . . . ." (TR 292.) Additionally, in a TTI Progress Note dated November, 20, 2009, Joan Muhme, LBSW, noted that she had offered to help Plaintiff with his upcoming Social Security meeting if needed. (TR 362.) While the record demonstrates that TTI recommended that Plaintiff apply for Social Security, and at times charged Plaintiff with the responsibility of applying to achieve his goal of financial independence, there is no evidence that TTI conditioned Plaintiff's treatment on applying for Social Security disability or made it an ultimate goal of his treatment as the ALJ suggests. The undersigned finds that this portion of the ALJ's reasoning for affording little weight to Dr. Mathew's medical opinion is flawed and is not supported by substantial evidence.

Lastly, the ALJ assigned little weight to Dr. Mathew's medical opinion because her medical source statement dated March 21, 2011, includes additional commentary written in another hand and provides no evidence that Dr. Mathew endorsed this commentary. (TR 20.) Plaintiff asserts that the record does indeed contain Dr. Mathew's endorsement of the additional commentary. (Docket no. 10 at 14.) Plaintiff explains that Dr. Mathew's medical source statement (including the additional commentary) was originally submitted to the Office of Disability Adjudication and Review without a signature (*see* TR 402-408) but was later resubmitted with her signature (*see* TR 483-490). (Docket no. 10 at 14.) Upon a review of the record, the only two differences between Dr. Mathew's original and resubmitted medical source statements are: (1) affixed to the resubmitted medical source statement is a cover letter from Plaintiff's counsel advising the ALJ that the statement was filled out by "Dr. S. Matthews;" and (2) Dr. Mathew's name and business address were printed in the space provided below the signature line, however, Dr. Mathew's name is spelled incorrectly as "Dr. Matthews." (TR 483, 490.) Defendant contends that the ALJ was reasonably suspicious of the two different handwritings in Dr. Mathew's medical source statement. (Docket no. 13 at 12.) The undersigned agrees and finds that this reason to afford little weight to Dr. Mathew's medical opinion is "good reason" under 20 C.F.R. § 404.1527(c)(2). While the undersigned finds that a portion of the ALJ's reasoning for discounting Dr. Mathew's medical opinion is flawed, the undersigned concludes that, overall, the ALJ's decision to give little weight to Plaintiff's treating psychiatrist, Dr. Mathew's, medical opinion is supported by substantial evidence and does not violate the "treating physician" rule.

Plaintiff also asserts that the ALJ's discounting of Dr. Mathew's medical opinion is unsupported by substantial evidence because the ALJ failed to properly weigh the opinions of Plaintiff's therapists, Gina Palacios, MA, LLP, and Andrea Orsini-Brown, LMSW, ACSW, CAC-R,

13

and the State agency psychological consultant, Dr. Thomas Tsai, M.D. (Docket no. 10 at 15-17.) Basically, Plaintiff's position is that if the ALJ had afforded the proper weight to Plaintiff's therapists and the State agency psychological consultant, the ALJ would have to afford greater weight to Dr. Mathew's opinion as being consistent with the record. (*Id*.)

Ms. Palacios and Ms. Orsini-Brown opined that Plaintiff had marked limitations in performing daily living activities and in maintaining concentration, persistence, and pace. (TR 279.) They also found that Plaintiff was moderately limited in adapting to change and had a mildly limited capacity to interact appropriately and communicate effectively with others. (TR 279.) The ALJ assigned very little weight to the opinions of Ms. Palacios and Ms. Orsini-Brown because they are not acceptable medical sources under the Social Security Act and because the limitations that they noted were inconsistent with their own essentially normal mental status evaluation of Plaintiff, as well as Plaintiff's own statements. (TR 18.)

Ms. Palacios is a limited licensed psychologist and Ms. Orsini-Brown is a licensed master social worker. Consequently, their opinions and assessments are not opinions from acceptable medical sources as defined in the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). The ALJ can consider their opinions as evidence from "other" medical sources, but he is not required to accord their opinions any special weight or consideration as is required with the opinions of doctors. *Taylor v. Comm'r*, No. 11-46, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R. § 404.1513(d)(1)). The ALJ considered Ms. Palacios and Ms. Orsini-Brown's assessment of Plaintiff's limitations and found that the record did not support their assessment.

Social Security Ruling 96-6p states that an ALJ must consider the findings made by State agency psychological consultants regarding the nature and severity of an individual's impairments as expert opinion evidence of a nonexamining source. The Ruling further states that the ALJ is not

14

bound by findings made by State agency psychologists but may not ignore these opinions and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

Dr. Tsai found that while Plaintiff was moderately limited in carrying out detailed instructions, maintaining concentration for extended periods of time, and sustaining an ordinary routine and work schedule, Plaintiff did have the ability to perform unskilled work by carrying out simple instructions, adapting and responding appropriately to most changes in the work setting, and maintaining sufficient concentration to perform simple one- to two-step tasks on a regular basis. (TR 374-76). Here, the ALJ assigned great weight to Dr. Tsai's psychological consultative evaluation of Plaintiff. (TR 20.) The ALJ acknowledged that Dr. Tsai's opinion did not deserve as much weight as that of a treating physician but explained that great weight was warranted in this case because it was wholly consistent with the record. (TR 20.) Specifically, the ALJ noted that Dr. Tsai's opinion was consistent with Plaintiff's daily living activities and ability to work after the alleged disability onset date, as well as Dr. Mathew's treatment notes and evaluations which demonstrated a continuous, steady improvement in Plaintiff's mental health. (TR 20.)

Based on a review of the record and the ALJ's explanations for the weight he assigned to the opinions and assessments of Ms. Palacios, Ms. Orsini-Brown, and Dr. Tsai, the undersigned finds that the ALJ followed the proper legal standards in weighing their opinions and that the ALJ's determination of their weight is supported by substantial evidence. Accordingly, Plaintiff's argument that the ALJ's assessment of Dr. Mathew's medical opinion is not supported by substantial evidence based on the weight he assessed to the opinions of Plaintiff's therapists and the state agency psychological consultant is unsuccessful.

    **2.**  **The ALJ's RFC Assessment and Hypothetical Question to the VE**

Plaintiff argues that the ALJ erred in the formulation of his RFC assessment and the hypothetical question presented to the VE because they did not accurately describe the ALJ's own findings regarding Plaintiff's limitations as to social functioning and concentration, persistence, or pace. (Docket no. 10 at 17-20.) Specifically, Plaintiff bases his argument on the ALJ's determination of Plaintiff's limitations in step three of the Social Security Administration's sequential evaluation process. (Docket no. 10 at 18; TR 12, 14.) As the ALJ states in his decision, however, that those particular limitations are not used for the RFC assessment; rather, they are used to rate the severity of impairments in steps two and three of the sequential evaluation process. (TR 15.) Moreover, the ALJ is only required to incorporate in his hypotheticals those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of HHS.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, in determining Plaintiff's RFC, the ALJ found that Plaintiff is limited to performing simple, unskilled work. (TR 17.) The ALJ presented this limitation in his hypothetical question to the VE, and the VE testified that there are jobs available for a person with this limitation. (TR 46-47.) Thus, in substance, Plaintiff's argument relies on the Court finding that the ALJ improperly assessed Plaintiff's mental limitations when he discounted the opinions of Plaintiff's psychiatrist and therapists. As discussed above, however, the ALJ's decision to give little weight to the medical opinions of Dr. Mathew and Plaintiff's other therapists is supported by substantial evidence. To bolster his argument in this respect, Plaintiff asserts that the ALJ should not have relied on the opinion of the State agency psychological consultant because it is internally inconsistent; the undersigned disagrees. Accordingly, Plaintiff's argument fails.

**VI.    CONCLUSION**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (Docket no. 10)

should be DENIED, and Defendant's Motion for Summary Judgment (Docket no. 13) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 5, 2014                s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

   I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 5, 2014     s/ Lisa C. Bartlett
              Case Manager